FILED

DEC 1 2003

LARRY W. ~~~~~~ ~ERK
CHAR~~~~~~, SC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | | |
|---|---|---|
| JOHN CROWE, | ) | |
| | ) | |
| Plaintiff, | ) | **0  03  3786  18** |
| | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| HILLCREST FOODS, INC. and | ) | |
| WAFFLE HOUSE, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

1.     This lawsuit arises from Defendants' refusal to serve Plaintiff John Crowe ("Plaintiff" or "Crowe"), on the basis of his race, in the Waffle House restaurant located on Cherry Road in Rock Hill, South Carolina ("the Rock Hill Waffle House") on February 23, 2002.

2.     In refusing to serve Plaintiff, Waffle House denied him the right to make and enforce contracts on the same basis as white citizens, in violation of 42 U.S.C. § 1981 and state law, and denied him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Rock Hill Waffle House, on the basis of race, in violation of 42 U.S.C. § 2000a and state law.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000a-6.

4.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b), as Plaintiff and Defendants reside within this Judicial District and the events alleged herein occurred within this District.

5.    This action arises under the Commerce Clause of the Constitution of the United States, Article One, Section Eight, Clause Three, and under legislation appropriately enacted by the United States Congress to enforce the Thirteenth Amendment to the Constitution of the United States.

## PARTIES

6.    Plaintiff John Crowe is an African-American citizen of the United States and resident of Rock Hill, South Carolina. At all times relevant to this action, he was a graduate student at Winthrop University.

7.    Defendant Hillcrest Foods, Inc. ("Defendant Hillcrest") is a Georgia corporation doing business in the state of South Carolina. Its corporate headquarters are at 345 Saw Mill Drive, Suwanee, Georgia. Hillcrest Foods, Inc. owns or operates multiple Waffle House franchises, including the Rock Hill Waffle House. Defendant Hillcrest Foods owned the Rock Hill Waffle House as a franchisee and agent of Defendant Waffle House, Inc.

8.    Defendant Waffle House, Inc. ("Defendant Waffle House") is a Georgia corporation, with its principal place of business in Norcross, Gwinnett County, Georgia. Its corporate headquarters are located at 5986 Financial Drive, Norcross, Georgia. Defendant Waffle House, Inc. conducts business throughout the United States, with approximately 1,400 restaurants and restaurant franchises in twenty-six states. Its registered agent is Greg Newman, 5986 Financial Drive; Norcross, Georgia 30071.

## FACTS

9.     On Saturday, February 23, 2002, at about 1:30 a.m., John Crowe went to the Waffle House located on Cherry Street in Rock Hill, South Carolina.

10.     There were at least two empty tables when Crowe arrived.  Because there was not a line of customers, he was able to take a seat at the counter immediately.  His seat was directly in front of the cash register.

11.     Shortly after Crowe arrived, two young black men came in and sat down beside him at the counter.

12.     As Crowe and the two young black men waited for service while seated, a white man came in and sat down at the opposite end of the counter.

13.     A white waitress approached the white man immediately after he sat down. She was kind, courteous, and eager to take his order.

14.     The waitress placed the white man's order with the cook.  Shocked, the two young black men asked Crowe, "Weren't we here first?"  Also upset but calm, Crowe confirmed that the three of them had arrived and been seated at the restaurant for service before the white man.

15.     Crowe and the other two black men continued waiting for their order to be taken. By this time, Crowe had been waiting without service for approximately thirty minutes.

16.     Another white male entered the store and stood by the cash register next to Crowe.  Another white waitress walked from the back of the restaurant and approached this second white male.  She asked to take this man's order.

17.     The second white male customer told the waitress, "They were here first."

18.    The waitress then acknowledged Crowe at the counter. Crowe observed a hostile change in her attitude and demeanor. Without greeting him or apologizing for the delay in service, she asked Crowe whether his order was to eat-in or to-go.

19.    Although he wished to eat in, Crowe told the waitress that his order was to-go because he disliked her attitude and the substantial delay in service.

20.    The waitress replied to the effect, "Well you're going to have to get out of your seat and stand in front of the cash register 'cause I don't take to-go orders from that seat."

21.    Crowe responded that he would just eat in the store rather than stand up to place a to-go order, especially since he was sitting directly in front of the cash register.

22.    The waitress became irate. She told Crowe that if Crowe ate in the store, she was not going to give him a to-go box if he asked for one. She then said that she had worked for "Waffle House" for nineteen years. She refused to take his order.

23.    Crowe felt that the waitress was trying to embarrass him.

24.    This waitress delivered the to-go order to the white man. She then took the orders of the other two young black men in a hostile and reluctant manner.

25.    Crowe sat in shock and disbelief for approximately thirty additional minutes without service.

26.    After waiting for service for a total of about one hour, the waitress came back to Crowe and, in a raised voice, said that if he would apologize she would think about serving him.

27.    Crowe asked her what he had done.  The waitress paused and then accused Crowe of cursing at her.

28.    Crowe never used profanity toward any of the waitresses at the Rock Hill Waffle House on that night.  He had remained calm and not raised his voice. Crowe therefore denied

using profanity toward her, and told her that he did not owe her an apology.  The waitress walked away from Crowe.

29.     After about fifteen more minutes, another waitress told the security guard at the restaurant to make Crowe leave because he would not be served.

30.     The guard approached Crowe and said that Crowe had to leave because he was being denied service.  The guard said, "You have to leave."

31.     Crowe asked the guard why he was being asked to leave the store.  The guard replied to the effect, "If you don't leave in the next ten seconds, you'll be charged with trespassing."  Crowe therefore stood up from his seat and left the restaurant.

32.     Crowe went home and was extremely upset.  He was distraught and unable to sleep that night.

33.     When Crowe got out of class the next morning, he went back to the Rock Hill Waffle House to speak to the manager. Crowe explained that the white waitresses denied him service on account of his race the prior night. The manager at the time that morning, also African American, responded to the effect that, "I'm really sorry that happened to you—they treat us like that sometimes.  I'll talk to her when she comes in."

34.     Crowe was never served at the Rock Hill Waffle House.   To Plaintiff's knowledge, Defendant Hillcrest and Defendant Waffle House, Inc. (collectively, "Defendants") failed to take action to correct or discipline any employee involved in the refusal of service to Crowe, or to investigate Crowe's complaint.

## COUNT I
### (Violation of 42 U.S.C. § 1981 against Hillcrest Foods, Inc.)

35.     Plaintiff realleges and incorporates all preceding paragraphs, as if set forth fully herein.

36.     At all times material to this action, Plaintiff, while seeking food and services from Defendants, presented himself in a fit and proper manner, both in terms of dress and conduct.

37.     Defendant Hillcrest refused to serve, or otherwise denied, Plaintiff food and services because of his race.

38.     At all times relevant to the events described in this Complaint, the staff at the Rock Hill Waffle House was acting within the scope of their employment and in their capacities as employees, agents and/or representatives of Defendants.

39.     The discriminatory practices described in this Complaint were carried out: (a) at the direction of and with the consent, encouragement, knowledge, and ratification of Defendants; (b) under Defendants' authority, control and supervision; and/or (c) within the scope of the staff's employment.

40.     Defendant Hillcrest's actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying Plaintiff equal treatment on the basis of his race. Defendant Hillcrest acted maliciously, in bad faith, and with willful, callous, wanton and reckless disregard for Plaintiff's federally-protected rights.

41.     Defendant Hillcrest treated similarly situated white persons differently from Plaintiff.

42.     Defendant Hillcrest failed to conduct a full and adequate investigation of Crowe's complaint or provide any adequate redress for their refusal to provide service to plaintiffs on a non-discriminating basis.

43.     By the actions described in this Complaint, Defendant Hillcrest denied Plaintiff the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

44.     By the actions described in this Complaint, Defendant Hillcrest denied Plaintiff of his right to,  perform, modify and terminate contracts on the same basis as white persons, and deprived him of the enjoyment of the benefits, privileges, terms and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

45.     As a proximate result of the actions of Defendant Hillcrest described in this Complaint, Plaintiff has suffered, continues to suffer, and will, in the future, suffer great and irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress and mental anguish.

46.     Defendant Hillcrest engaged in a pattern and practice of discriminating against African-Americans in the provision of food and services.

47.     Defendant Hillcrest knowingly authorizes, assists, encourages and condones such discriminatory conduct by, among other things, managerial authorization of, and participation in, discrimination and otherwise failing to adequately address numerous occurrences and complaints of discrimination toward African Americans.

## COUNT II
(Violation of 42 U.S.C. § 1981 against Waffle House, Inc.)

48.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth in full herein.

49.     At all relevant times herein, Defendant Hillcrest acted as an agent of Defendant Waffle House, which exercised actual, apparent, and constructive control, oversight, and direction over the Rock Hill Waffle House restaurant's operations.

50.     Defendant Waffle House, among other things, provides direction, training, and support to its franchises, including the Rock Hill Waffle House, in the areas of food preparation and distribution, store appearance, accounting, customer service, personnel, standards, procedures and other day-to-day operational matters.

51.     At all times relevant to this Complaint, Defendant Hillcrest and Defendant Waffle House were parties to a franchise agreement under which Defendant Waffle House exercised substantial actual, apparent, and potential authority and control over Defendant Hillcrest's franchises.

52.     Defendant Waffle House, among other things, is involved in personnel matters such as supervisory and employee training, policies and manuals, including policies and practices relating to non-discrimination and customer complaints.

53.     Through its advertising, signage, slogans, marketing, uniforms, menus, service, physical facilities and other actions and representations, Defendant Waffle House held out Defendant Hillcrest and the Rock Hill Waffle House as its agents and led Plaintiff to believe reasonably that it had the authority to act on behalf of the Rock Hill Waffle House and Defendant HIlcrest.

54.     Plaintiff chose to eat at the Rock Hill Waffle House after seeing the familiar yellow and black sign advertising the Waffle House name.  Neither the sign nor anything at the restaurant led Plaintiff to believe he was eating at a restaurant that was not under the substantial actual, apparent, and potential control and authority of Defendant Waffle House.

55.     Plaintiff, who is familiar with the Waffle House restaurants, their uniform quality of food and other representations, was reasonably induced to eat at the Rock Hill Waffle House. Plaintiff reasonably relied upon such representations and indicia in selecting the restaurant.

56.    Plaintiff's justifiable reliance led to the injuries described in this Complaint.

57.    Defendant Waffle House is liable for the unlawful conduct alleged in this Complaint under the theories of actual and apparent agency and authority.

58.    Through its toll-free telephone number and other means, Defendant Waffle House exercised the right and assumed the duty of obtaining and handling customer complaints, including discrimination complaints at both its corporate-owned and franchised stores.

59.    Plaintiff sought food and services from Defendant Waffle House and was denied food and services.

60.    Defendant Waffle House refused to serve, or otherwise denied, Plaintiff food and services because of his race.

61.    Defendant Waffle House's actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying Plaintiff equal treatment on the basis of race.  Defendant Waffle House acted maliciously, in bad faith, and with willful, callous, wanton and reckless disregard for Plaintiff's federally-protected rights.

62.    Defendant Waffle House treated similarly situated white persons differently from Plaintiff.

63.    Defendant Waffle House failed to conduct a full and adequate investigation or otherwise provide adequate redress for its refusal to provide service to Plaintiff.

64.    By the actions described above, Defendant Waffle House has denied Plaintiff the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

65.    By the actions described above, Defendant Waffle House has deprived Plaintiff of the equal enjoyment of the benefits, privileges, terms and conditions of a contractual relationship in violation of 42 U.S.C. § 1981.

66.    As a proximate result of the actions of Defendant Waffle House described, Plaintiff has suffered and continues to suffer great and irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress and mental anguish.

67.    Defendant Waffle House engages in a pattern and practice of discriminating against African-Americans in the provision of food and services.

68.    Defendant knowingly authorizes, assists, encourages and condones such discriminatory conduct by, among other things, managerial authorization of, and participation in, discrimination and otherwise failing to adequately address numerous occurrences and complaints of discrimination toward African Americans.

## COUNT III
(Violation of 42 U.S.C. § 2000a against Hillcrest Foods, Inc.)

69.    Plaintiff realleges and incorporates all preceding paragraphs, as if set forth fully herein.

70.    The Rock Hill Waffle House restaurant is a "place of public accommodation" within the meaning of 42 U.S.C. § 2000a.

71.    The operations of the Rock Hill Waffle House affect commerce within the meaning of 42 U.S.C. § 2000a.  The Rock Hill Waffle House serves or offers to serve interstate travelers. A substantial portion of the food that it serves, or other products that it sells, have moved in interstate commerce.

72.    Plaintiff has met all administrative requirements, if any, prior to filing this action.

73.     But for Defendant Hillcrest's discriminatory practices, Plaintiff could, and would, visit a Waffle House restaurant in the future.  Plaintiff continues to reside in South Carolina and fears future harm if he were to patron any Waffle House restaurant.

74.     Plaintiff attempted to receive of the full benefits and enjoyment of a public accommodation, but Defendant Hillcrest denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, on the basis of race, in violation of 42 U.S.C. § 2000a..

## COUNT IV
(Violation of 42 U.S.C. § 2000a against Waffle House, Inc.)

75.     Plaintiff realleges and incorporates all preceding paragraphs, as if set forth fully herein.

76.     But for Defendant Waffle House's discriminatory practices, Plaintiff could, and would, visit the Rock Hill Waffle House or other Waffle House restaurants in the future.

77.     Plaintiff attempted to afford himself of the full benefits and enjoyment of a public accommodation, but Defendant Waffle House has denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of a public accommodation, on the basis of race, in violation of 42 U.S.C. § 2000a.

## COUNT V
(Violation of S.C. Stat. § 45-9-30  against Hillcrest, Inc.)

78.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if set forth fully herein.

79.     The Rock Hill Waffle House restaurant is a "place of public accommodation" within the meaning of S.C. Stat. § 45-9-10(B)(2).

80.     The operations of the Rock Hill Waffle House, owned and operated by Defendant Hillcrest and under the substantial actual, apparent, or potential control and authority of Defendant Waffle House, are supported by state action as defined in S.C. Stat. § 45-9-10(C).

81.     By the actions described in this Complaint, Defendant Hillcrest has deprived Plaintiff of the right to full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of the Rock Hill Waffle House on the basis of race in violation of S.C. Stat. § 45-9-10, 30.

## COUNT VI

(Violation of S.C. Stat. § 45-9-30 against Waffle House, Inc.)

82.     Plaintiffs reallege and incorporate by reference all preceding paragraphs as if set forth fully herein.

83.     The Rock Hill Waffle House restaurant is a "place of public accommodation" within the meaning of S.C. Stat. § 45-9-10(B)(2).

84.     The operations of the Rock Hill Waffle House, under the substantial actual, apparent, or potential control and authority of Defendant Waffle House, Inc., are supported by state action as defined in S.C. Stat. § 45-9-10(C).

85.     By the actions described in this Complaint, Defendant Waffle House has deprived Plaintiff of the right to full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of the Rock Hill Waffle House on the basis of race in violation of S.C. Stat. § 45-9-10, 30.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant him relief as follows:

(a)    enter a declaratory judgment finding that the actions of Defendants as alleged in this Complaint violated 42 U.S.C. §§ 1981 and 2000a and state law as alleged above;

(b)    enter a permanent injunction barring Defendants from continuing to engage in illegally discriminatory conduct against Crowe and other African-Americans who might visit the Rock Hill Waffle House or other Waffle House restaurants in the future;

(c)    enter a permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

(d)    award compensatory damages in an amount that would fully compensate Plaintiff for his damages, including but not limited to, humiliation, embarrassment, emotional distress, and mental anguish, caused by Defendants' violations of the law, as alleged in this Complaint;

(e)    award punitive damages to Plaintiff in an amount that would punish Defendants for the intentional, malicious, callous, bad faith, willful, wanton and reckless misconduct alleged in this Complaint and that would effectively deter Defendants from future discriminatory behavior;

(f)    award Plaintiff his attorneys' fees and costs; and

**(g)**    order all other relief deemed just and equitable by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable as of right.

Dated: _12/01_, 2003.

JOHN CROWE

Dated: ___12|1_____, 2003.

_Terry A. Rickson_

Terry Ann Rickson, SC Bar No. 4727
TERRY ANN RICKSON, ESQUIRE, INC.
102 Wappoo Creek Drive, #8
Charleston, South Carolina 29412
Phone: 843/722-1500
Facsimile: 843/722-7080

Of Counsel:

Henderson Hill, NC Bar No. 18563
Corie D. Pauling, NC Bar No. 24948
FERGUSON, STEIN, CHAMBERS,
ADKINS, GRESHAM & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina  28204-2828
Phone: 704/375-8461
Facsimile: 704/334-5654

Gerald S. Hartman, DC Bar No. 168484
Wendelyn L. Pizer, DC Bar No. 479372
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, DC  20005-1209
Phone: 202/842-8800
Facsimile: 202/842-8465

Thomas J. Barton, PA Bar No. 50603
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Street
Philadelphia, PA 19103-6996
Phone: 215/988-2700
Facsimile: 215/988-2757

Susan E. Huhta
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington, DC  20036
Phone : 202/319-1000
Facsimile: 202/319-1010

_Counsel for Plaintiff_